PULASKI COUNTY ex rel, Roger C.
MEARS, Jr., County Judge *v.* The
Honorable Richard B. ADKISSON,
Circuit Judge et al

77-194                                          560 S.W. 2d 222

Opinion delivered January 9, 1978
(In Banc)

*Jack D. Files,* for petitioner.

*Lee A. Munson,* Pros. Atty., by: *John Wesley Hall, Jr.,* Dep. Pros. Atty., for respondents.

Darrell Hickman, Justice. The county Judge of Pulaski County filed with us a petition for a writ of prohibition asking that we prohibit two Pulaski County circuit judges from enforcing an order they signed in 1977 funding the Public Defender's Program of Pulaski County.

We granted a temporary writ of prohibition on July 11, 1977. On review we make it permanent.

The Public Defender's office of the Sixth Judicial District [Pulaski and Perry Counties] presently exists and operates by Act 279 of 1975. Section 3 of that Act reads:

> The circuit court may create a Public Defender System for indigent persons accused of serious crimes in the district and provide for the compensation of such attorneys and investigators as is necessary and for the reasonable expenses of the office. These salaries and expenses shall be paid for the administration of justice from General Revenues of the county and without the necessity of a prior appropriation therefor by the quorum court.

The Pulaski County Public Defender's office 1977 budget for a total of $185,284.76 was submitted and approved by two circuit judges. The budget provided for salaries for eight employees totalling $141,420.00; retirement money in the amount of $14,142.00; and, withholding for F.I.C.A. in the amount of $6,522.76. Also, the budget contained a provi-

sion for office supplies, postage and other miscellaneous expenses totalling $23,200.00.

Two of the four Pulaski County circuit judges, who make up the Criminal Division, had in the past signed orders approving the budget of the Public Defender's office and directing Pulaski County to pay the money without an appropriation by the quorum court.

The two-judge order signed in June, 1977, stated:

. . . that the Proposed Budget submitted by the Public Defender, attached hereto, is approved and made a part of this Order, and the County Judge of Pulaski County is hereby ordered to pay said amounts with County General Funds without prior appropriation of the Quorum Court.

The Pulaski County Judge refused to pay any money from the county general fund and sought a writ of prohibition from us to prevent the circuit judges from enforcing the order.

We hold this order was entered without judicial authority because it determines and orders payment of salaries and expenses for the Public Defender's office. Such action is a legislative and not a judicial function. The order and Section 3 of Act 279 — which authorizes the circuit court to set salaries — are in violation of the separation of powers doctrine of the Arkansas Constitution. Ark. Const., Art. 4, § 2.

Prohibition is a proper remedy in this case because the circuit judges had no jurisdiction over the subject matter. *Webb v. Todd Harrison, Circuit Judge,* 261 Ark. 279, 547 S.W. 2d 748 (1977).

We emphasize that our decision is limited to the sole issue of the circuit court's authority to set salaries. Although the parties raised numerous arguments, we do not at this time feel it necessary to rule on these matters.

BYRD, J., not participating.

Fogleman and Howard, JJ., dissent.

John A. Fogleman, Justice, dissenting. Prohibition is an extraordinary and discretionary writ to be used cautiously. *Karraz* v. *Taylor*, 259 Ark. 699, 535 S.W. 2d 840. It should be issued by this court only when a trial court is attempting to act when it clearly has no jurisdiction or authority or is about to act in excess of its jurisdiction. *Midwest Lime Co.* v. *Independence County Chancery Court*, 261 Ark. 695, 551 S.W. 2d 537. The party seeking the writ must be clearly entitled to it. *Midwest Lime Co.* v. *Independence Chancery Court*, supra. It is to be issued only in cases of pressing necessity. *Harris Distributors* v. *Marlin*, 220 Ark. 621, 249 S.W. 2d 3. Of course, this does not mean that difficult legal questions, even constitutional ones, will not be decided in considering a petition for prohibition, but this court must be able to say upon the face of the record that the procedures of the trial court are erroneous or illegal, without the jurisdiction of the court, or in excess of its jurisdiction, before the writ should issue. *State* v. *Nelson*, 246 Ark. 210, 438 S.W. 2d 33. If there is any question of fact, the writ should be denied. *Capital Transportation Co.* v. *Strait*, 213 Ark. 571, 211 S.W. 2d 889; *Duncan* v. *Kirby*, 228 Ark. 917, 311 S.W. 2d 157. It is to be issued only when there is no adequate remedy at law by appeal or otherwise and no other protection from usurpation of judicial power. *State* v. *Nelson*, supra; *Twin City Lines* v. *Cummings*, 212 Ark. 569, 206 S.W. 2d 438; *Rodriguez* v. *Adkisson*, 254 Ark. 128, 491 S.W. 2d 814; *Patrick* v. *Wood*, 243 Ark. 418, 420 S.W. 2d 92. It is never issued to prohibit a trial court from erroneously exercising its jurisdiction. *Skinner* v. *Mayfield*, 246 Ark. 741, 439 S.W. 2d 651. It does not lie to review an order that has already been made. *City National Bank* v. *Johnson*, 191 Ark. 29, 79 S.W. 2d 987. I submit that prohibition is not a proper remedy in this case.

But my disagreement with the majority extends beyond its inappropriate use of this extraordinary writ. In my opinion, Act 279 of 1975 is a valid exercise of the legislative power. This act carries the same strong presumption of constitutionality that attends every legislative act and this requires that there be a clear incompatibility between the act and the constitution before it is held unconstitutional, and all doubts must be resolved in favor of the act. *Jones* v. *Mears*, 256 Ark. 825, 510 S.W. 2d 857; *Carter* v. *State*, 255 Ark. 225, 500

S.W. 2d 368, cert. den. 416 U.S. 905, 94 S. Ct. 1610, 40 L. Ed. 2d 110. If it is possible for the courts to so construe an act that it will meet the test of constitutionality, it must be so construed. *Stone* v. *State,* 254 Ark. 1011, 498 S.W. 2d 634.

The duty of the state to provide for effective assistance of counsel to indigent persons charged with felonies and certain misdemeanors is clearly mandated by the United States Constitution. *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, 93 ALR 2d 733 (1963); *Escobedo* v. *Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964); *Pointer* v. *Texas,* 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 ALR 3d 974 (1967); *Swenson* v. *Bosler,* 386 U.S. 258, 87 S. Ct. 996, 18 L. Ed. 2d 33 (1967); *Mempa* v. *Rhay,* 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967); *Anders* v. *California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493, reh. den. 388 U.S. 924, 87 S. Ct. 2094, 18 L. Ed. 2d 1377 (1967); *Argersinger* v. *Hamlin,* 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972); *In re Gault,* 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967).

This responsibility in felony cases was recognized by the General Assembly of Arkansas at a very early date, long before the United States Supreme Court came to that conclusion. See Rev. Stat. Ch. 45, § 112; Ark. Stat. Ann. § 43-1203 (Repl. 1964). This court has taken the position that this right is mandated by the Arkansas Constitution. *Therman* v. *State,* 205 Ark. 376, 168 S.W. 2d 833. But for many years attorneys appointed under that act were not compensated, because there was no indication that the legislature intended that counsel be compensated in such cases. This court took the failure of the legislature to fix and direct the payment of such fees to indicate an intention that the services of such counsel be gratuitous. *Arkansas County* v. *Freeman & Johnson,* 31 Ark. 266. Based on this view, we said in that case that the county court could allow no claim for such services because the law made no provision for payment.

The appointment of counsel without any provision for compensation proved to be an unsatisfactory arrangement. In 1953, by its Act 276, the General Assembly started dealing with the problem. It provided for compensation to appointed attorneys in all counties whose population did not exceed

100,000, when the quorum court made an appropriation for that purpose. The amount of the fee was to be fixed by the appointing court in each case but was to be not less than $25 or more than $250. See Ark. Stat. Ann. §§ 43-2415, 2416. This act was appropriately criticized. The major criticisms were the requirement of quorum court appropriation and the elimination of Pulaski, the most populous county, from its application. Dunaway, Acts Affecting the Administration of Criminal Law, 7 Ark. Law Rev. 334. The conclusion of these comments by the writer, a former justice of this court, were appropriate. He said:

> These two weaknesses in the Act are unfortunate, because the need for such a law has long been recognized. Since even lawyers are human beings, it stands to reason that one who is compensated for his work is more likely to do a better job. The necessity of paid assigned counsel or a system of public defenders, if impecunious defendants are to be properly represented, is clearly brought out and documented in the recent Survey of the Legal Profession on Legal Aid of the American Bar Association.

In 1971, the General Assembly apparently found this approach taken in 1953 unsatisfactory and passed Act 125 [Ark. Stat. Ann. §§ 43-2417, 2418 (Repl. 1975)]. That act eliminated the necessity of any appropriation by the quorum court and made the provisions of the earlier act applicable to all counties.

The emergency clause of Act 276 was a clear declaration of the state's intention to meet its constitutional responsibilities, and, at the same time, it emphasized the deficiency in the existing system. In pertinent part it read:

> It has been found and is hereby declared by the General Assembly that the payment of a fee as provided for in this Act will assure an accused who is without financial funds to secure his own attorney of adequate representation by counsel and will aid and assure him of the preservation of his constitutional rights and provide a reasonable compensation to an attorney for his time and services in representing an accused. ***

The emergency clause of Act 125 was a definite finding that previous measures had proven unsatisfactory. The first sentence of that clause read:

It has been found and is hereby declared by the General Assembly that in securing to an indigent his constitutional rights under the Constitution of this State and of the United States, it is essential that counsel be furnished him and that said counsel be compensated for his time, out-of-pocket expenses, and services.

An additional step was taken in 1977 by Act 246. By that act the legislature increased the maximum fee allowance to $350 and added an investigation expense allowance not to exceed $100. That act, however, required the quorum court to appropriate from the county general fund adequate funds to pay such fees, upon receipt of an order of the circuit court fixing them. It also provided for disqualification of certain attorneys from appointment and stated that the appointing court's fee allowance should be based upon the experience of the attorney appointed and the time and effort devoted by him in the preparation and trial, commensurate with fees paid other attorneys in the community for similar services. The provision leaving the amount of compensation in the discretion of the trial court was unaffected.

Meanwhile, there was still dissatisfaction with the appointed counsel system (see Moore, The Right to Counsel for Misdemeanors in State Courts, 20 Ark. Law Rev. 156) and experiments in the use of a public defender system were initiated. In three counties, Washington, Sebastian and Pulaski, public defender systems were established with funds from the Law Enforcement Assistance Administration, matched partially by state or county funds or services. See Case Note, Representation for Indigent Misdemeanants, 26 Ark. Law Rev. 563 (1972). Apparently, these experiments met with a sufficient degree of success to cause the General Assembly to move in that direction. It provided for public defender systems in the Fourth Judicial District by Act 242 of 1975 and in the Sixth Judicial District by Act 279, the act in question here.

The public defender in Act 279 is an attorney appointed

by the judges of the courts having jurisdiction of criminal cases to represent indigent defendants in criminal cases. The act is cumulative to all other acts providing for legal services to indigent persons. There is nothing in the act to indicate that the public defender or his deputies are public officers or employees or officers in any sense of the word, except for being officers of the court, just as are attorneys appointed under Ark. Stat. Ann. § 43-1203 and compensated under Ark. Stat. Ann. § 43-2417, 2418. A public defender appointed by the judiciary under this system is not a public officer or employee but is a private attorney representing defendants in criminal cases. *Spring* v. *Constantino,* 168 Conn. 563, 362 A. 2d 871 (1975). See also *Ex parte Hough,* 24 Cal. 2d 522, 150 P. 2d 448 (1944). The only difference between the appointed counsel system and the public defender appointed by the circuit court under Act 279 is that the former acts on a case by case basis and the latter on a permanent basis. *State* v. *DeJoseph,* 3 Conn. Cir. 624, 222 A. 2d 752 (1966). In *People* v. *Mullins,* 188 Col. 29, 532 P. 2d 736 (1975), the Supreme Court of Colorado said:

> The appointment of a public defender does not differ significantly from the appointment of private counsel in an individual criminal case. Indeed, the appointment of a public defender is of greater benefit to a defendant who is thereby provided counsel who is employed solely in criminal defense work.

Act 279, unlike Act 246 of 1977, eliminates the necessity for any appropriation by the quorum court and requires payment of the compensation of the attorneys and investigators in the public defender system and its reasonable expenses as provided by the judges having jurisdiction of criminal cases.

I submit that in holding Act 279 of 1975 unconstitutional, the majority of this court has been diverted by a semantical red herring, i.e., the use of the word "salaries" in the act and by its unwarranted adoption of the word "office" as descriptive of the status of the public defender. Perhaps the legislature should have stuck with the word "compensation" that it used in the first sentence of § 3 and not shifted to "salaries" in the second. Basically, it meant compensation. Perhaps it should have used the word "fees"

as it did in dealing with the problem in Act 246 of 1977. In any event, the use of the word "salaries" has not made something of a public defender that he is not, i.e., an officer or employee of the state or county.

, The total budget of the public defender system is $185,284.76.[1] The General Assembly of 1975 knew that 2065 cases were filed in the Criminal Divisions of the Circuit Court of Pulaski County. Tenth Annual Report of the Judicial Department of Arkansas. It may not have known how many of these were indigent. The circuit judges knew that in 1976 there were 2026. They knew how many of these were indigents who were entitled to the services of appointed counsel. If there should be 2000 such cases in 1977 and only 25% of these cases involved indigent defendants and the maximum fees allowable under Act 246 of 1977 were appropriate, payment of $225,000 from the county treasury would be required to compensate appointed counsel. Perhaps in providing for the alternative to appointed counsel in each case the General Assembly could anticipate that a more efficient and more economical system of providing the constitutionally required effective assistance of counsel could be provided through Act 279.

We had no problem with the legislation allowing the appointing court to fix the amount of compensation to be paid to the attorney appointed. As a matter of fact, in *Nail v. State,* 231 Ark. 70, 328 S.W. 2d 836, we called it a salutary provision. We should have no problem here. It should be noted that there is statutory authorization for circuit judges to require the payment of expenses incident or necessary to a speedy and efficient administration of justice. Pope's Digest § 2858; Crawford & Moses Digest § 2230.[2]

I am sure that it is now obvious that I would deny the writ.

---

[1] I have not found any itemization of this total in any abstract of the record in this case.

[2] The compiler of Arkansas Statutes, Annotated, has not included this statute in that publication on the fallacious theory that it had been superseded by Ark. Stat. Ann. § 22-349.1 (Repl. 1962). That statute merely provided for payment of the expenses of judges and had no bearing whatever upon the expenses which were the subject of Pope's Digest § 2858.

I am authorized to state that Mr. Justice Howard joins in this opinion.