Don VENHAUS, County Judge, et al *v* STATE of
Arkansas, ex rel., Floyd J. LOFTON

84-205                                    684 S.W.2d 252

Supreme Court of Arkansas
Opinion delivered February 18, 1985

*Henry & Duckett,* by: *James M. Duckett,* for appellant.

*Frederick K. Campbell;* and *Steve Clark,* Att'y Gen., by: *Jeffrey A. Bell,* Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The underlying issue in this case is whether the legislature, the quorum court, or the circuit judge has the authority to set the salary for circuit court probation officers. Act 591 of 1981 (not codified because it is categorized as local legislation) provides that the salaries of the probation officers of Pulaski County shall not be less than $15,000 nor more than $20,000 and that the salaries of deputy probation officers shall not be less than $13,000 nor more than $18,000, with the exact amount to be set by the circuit judge. The act specifies that the salaries shall be paid by Pulaski County. Appellee Circuit Judge Floyd Lofton, of the first division of the sixth circuit, set the amounts of the salaries for the first division of the sixth circuit at $20,000 and $18,000. The Quorum Court of Pulaski County appropriated only $17,800 and $16,457 for the two employees. The Circuit Judge informed the County Judge by letter that the salaries of $20,000 and $18,000 were necessary and essential expenses for the administration of justice. The County Judge refused to approve disbursement of county funds in excess of the appropriation by the Quorum Court. The Circuit Judge then sought a writ of mandamus to compel the County Judge, Treasurer and Quorum Court to pay the higher salaries. The circuit court, by a judge on assignment, issued the writ of mandamus. We reverse. Jurisdiction to interpret the Constitution of Ark-

ansas, to determine the constitutionality of state law and to hear the appeal of a mandamus action directed to county officials is in the Court. Rule 29 (1)(a), (c), and (f).

The county officials argue that the writ of mandamus should be dissolved because Amendment 55 to the Constitution of Arkansas implies that the quorum court should set the salaries of circuit court employees. The argument is without merit. Traditionally quorum courts have been held to have jurisdiction only over local matters, and a circuit court and its employees are not a local matter. *Campbell, County Judge* v. *Arkansas State Hospital*, 228 Ark. 205, 306 S.W.2d 313 (1957). Amendment 55 does not cause us to modify this body of law. The Amendment provides that the quorum court may exercise only "local legislative authority." Section 1 (a). In addition, our earlier cases have set out additional reasons the quorum court is without discretion to set the expenses of state courts.

In *Burrow, County Judge* v. *Batchelor*, 193 Ark. 229, 98 S.W.2d 946 (1936), the county court refused to pay the salaries for the court reporter and grand jury stenographer in the amounts set by the legislature, and we authorized the circuit court to impound county funds to pay the salaries. In the material part of the opinion, we wrote:

> These claims are a part of the necessary expenses of the operation of the county government and take precedence over all permissive expenditures. They are provided by statute so that courts and other such agencies may function. They are imposed by law and must be paid as long as there is money within the general fund to pay them. If this were not so, county government must stop. It is not discretionary with the county court to allow them. The county court must allow them, and, if it fails to do so, the circuit court may compel him to perform this ministerial act. This court ruled in the case of *Polk County* v. *Mena Star Co.*, 175 Ark. 76, 298 S.W. 1002, in speaking of all necessary expenses imposed by law, that the county court has no control or discretion over them except, perhaps, the amount to be allowed for the services. In the instant

case, the amount to be allowed is fixed by law. If the law were otherwise, county courts might obstruct the necessary and orderly administration of the affairs of the county. In view of the supervisory power of the circuit court over inferior tribunals, it did not exceed its authority in impounding the fund in the hands of the treasurer until the proceeding in mandamus might be adjudicated.

In *Crawford County* v. *City of Van Buren*, 201 Ark. 798, 146 S.W.2d 914 (1941), it was claimed that a legislative enactment requiring the quorum court to appropriate money for municipal court purposes was unconstitutional. In upholding the statute, we wrote:

> We do not think, however, that these sections of the Constitution operate to deprive the general assembly of the power to impose duties upon counties and to require counties to pay therefor. Our cases are to the contrary. For instance, in the case of *Polk County* v. *Mena Star Co.*, 175 Ark. 76, 298 S.W. 1002, there is an enumeration of various items of expenses imposed upon counties by legislative enactment. In the case of *Burrow, County Judge* v. *Batchelor*, 193 Ark. 229, 98 S.W.2d 946, there was involved an act of the general assembly requiring all counties to pay salaries of circuit court and grand jury stenographers. This act was upheld, . . .

In *Campbell* v. *Arkansas State Hospital*, 228 Ark. 205, 306 S.W.2d 313 (1957), we held that a county was required to pay expenses for mental tests of defendants, when ordered to so do by a circuit court and we stated:

> "Act 77, § 6, Ark. Acts of 1879, Pope's Digest § 2527, now codified as Ark. Stat. (1947) § 17-409, has been considered and discussed in many cases. In *Polk County* v. *Mena Star Co., supra,* it was pointed out that '***this court, many years ago, determined and held that there were two classes of obligations dealt with in this section of the statutes (Ark. Stat. (1947), § 17-409); first, those that are imposed on the counties by law and about which the county court is substantially without discretion; *** items 1 to 4 inclusive, being in the first class ***' It is interesting to note that the first item (Ark.

Stat. (1947) § 17-409, sub-par. Sixth — 1.) provides: '1. To defray the lawful expenses of the several courts of record of the county or district and the lawful expenses of criminal proceedings in magistrate's courts, ***'

"From this plain language and the many decisions analyzed in reaching the conclusion herein set forth, it seems fundamental that the County Court is responsible for the expenses of the courts in our judicial system.

\* \* \*

"Here we have an item having to do with expenses of the Circuit Courts, *** It is inconceivable that the framers of our Constitution could have intended to stretch the plain language of Art. 7, § 28, so as to vest the County Court, an office requiring no special knowledge of the law, with exclusive jurisdiction to completely thwart the operation of our criminal courts in granting an accused certain rights, by refusing to pay expenses of that court. The Circuit Court, a State Office, was hereby discharging a duty imposed on it by the legislative branch, namely, granting a mental examination to one accused of a crime who has raised the defense of insanity. In view of the myriad of cases and the longstanding operation of Ark. Stat. (1947) § 17-409 (1879 Act) there can be no question but that the County Court and the Quorum Court, its appropriating agency, *must* pay the expenses of the courts of record within their boundaries."

The quorum court is without discretion to establish the amount of the salaries of circuit court employees.

The county officials alternatively argue that Act 591 of 1981 is constitutionally invalid. The argument is correct. The Constitution of the State of Arkansas provides for three separate but equal branches of government. Article 4, Sections 1 and 2. Under our constitutional doctrine, the legislative branch is to fix salaries. *Beaumont, Judge* v. *Adkisson, Judge*, 267 Ark. 511, 593 S.W.2d 11 (1980). While the General Assembly may not delegate its legislative authority, it may by providing guidelines, delegate "the

power to determine certain facts, or the happening of a certain contingency, on which the operation of the statute is by its terms made to depend." *Walden* v. *Hart*, 243 Ark. 650, 420 S.W.2d 868 (1967). This rule was stated in *Hooker* v. *Parkin*, 235 Ark. 218, 225, 357 S.W.2d 534, 539, (1962) as follows:

> The Legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside the halls of legislation.

The statute at issue does not provide for grades or steps based upon training, education, experience, or other fact or thing to be used in the salary determination. The statute vests unbridled discretion in the judge and contravenes the separation of powers doctrine.

The Circuit Judge argues that, even if the statute is unconstitutional, he has the inherent authority to set the salaries. The argument assumes that there is no earlier act which validly sets the salaries of these employees.

The separation of powers doctrine necessarily implies that a court has the constitutional authority to order these acts done which are necessary and essential for the court to operate. However, that constitutional authority does not extend past ordering acts which are necessary and essential for the court to operate. *Turner, Ex Parte*, 40 Ark. 549 (1883).

The only evidence on the point is a rote phrase contained in a letter from the circuit judge to the quorum court stating that the amounts which he set were necessary and essential. This one conclusory phrase is not substantial evidence of absolute necessity. It is not sufficient to empower the circuit judge to exercise the constitutional authority to

require these acts done which are necessary and essential for a court to operate.

The writ of mandamus directing the county officials to pay salaries in the amounts fixed by the circuit judge is dissolved because the statute is unconstitutional, and there is no substantial evidence showing that two probation officers are absolutely essential to the operation of the court.

Writ dissolved.

HICKMAN, J., concurs.

PURTLE, J., dissents.

DARRELL HICKMAN, Justice, concurring. The majority concludes that the judgment below must be reversed for two reasons: (1) judges cannot legislate by setting salaries, *Beaumont* v. *Adkisson,* 267 Ark. 511, 593 S.W.2d 11 (1980); *Mears* v. *Adkisson,* 262 Ark. 636, 560 S.W.2d 222 (1978); and (2) even if the act is unconstitutional, the court's order alone is not sufficient to show that the salaries demanded for two probation officers were essential to the administration of justice. See *Union County* v. *Union County Election Comm.,* 274 Ark. 286, 623 S.W.2d 827 (1981). That ought to end the matter. Yet most of the opinion dwells on an issue I think we need not answer. That is whether probation officers are county or state employees and the power of the general assembly, through what amounts to local legislation, to impose on counties all expenses for circuit court employees with no recourse at all for the counties.

All the authority the majority cites to support the proposition that the state legislature can require the counties to pay the salaries and expenses of the courts is pre-Amendment 55 and pertains to employees and expenses obviously necessary for the administration of justice. For example, the older cases state that a court reporter is undoubtedly necessary for any court of record. *See McLellan* v. *Pledger,* 209 Ark. 159, 189 S.W.2d 789 (1945). A court house or a place to hold court is also essential. *Turner, ex parte,* 40 Ark. 549 (1883).

But there have been changes in our judicial system so

that now judges have secretaries, probation officers, deputy probation officers, case coordinators and bailiffs. That is, some judges do. Some are not so fortunate, because invariably the ability of a particular judge to get these assistants depends upon his influence with legislators serving the county or counties of the judge.

Before Amendment 55 it was customary, indeed necessary, for such local legislation to be approved by the local county judge, who had to insure that funds were available to pay local employees of the judges. That mutuality of respect and trust has obviously deteriorated and this case is a good example of what exists now: quorum courts, with the power over all the county expenses, in conflict with judges who have obtained special legislation for their individual needs.

I would not so quickly conclude that these probation officers are not county employees and that this is not a local matter. This particular circuit is composed of two counties, the largest in the state, Pulaski, and one of the smallest, Perry. There are ten judges serving the circuit. How many employees each has we do not know. Does Pulaski County pay the salaries of all the employees? The record is silent to these relevant facts. Until recently the court reporters were paid locally, each county bearing a part of the responsibility of the salary of the court reporters. Now they are paid by the state. Act 16 of 1981.

Undoubtedly, these employees are "local" or county employees according to the record. They are paid entirely from local funds; the state does not pay them one dime. Furthermore, the legislation was labeled "local," thereby relieving from responsibility all legislators except those from Pulaski County. So has the state decided this is indeed a matter of state interest? Our prior cases might not control if this issue is squarely before us. Amendment 55 § 4 expressly provides that quorum court shall have the power to fix the salaries of county employees. We should not rush to judgment on this issue. The majority opinion does not mention *Littleton* v. *Blanton,* 281 Ark. 395, 665 S.W.2d 239 (1984), which has altered dramatically our approach to local legislation. Until the state, in legislation that is not local,

declares these employees to be state employees or a matter of state interest and orders the counties to pay their salaries, fully aware of its actions, or until we have a more complete record to decide the issue, I would withhold judgment.

There are some other things which ought to be said. We do not have many questions on the separation of powers issue. Either the separate branches of government try to avoid infringing on the powers of each other and, in the main, respect the roles of each other, or the disputes are allowed to pass without litigation. Most cases are like this one where both parties have good arguments but the disagreement seems trivial. The trial judge's request seemed reasonable and no reason is given by the quorum court why it was refused. The quorum court appropriated just enough money to avoid a finding that it had refused to fund a position apparently necessary to the function of the court. Did it treat this judge's request the same as other judges? We do not know. Perhaps the quorum court should address itself to its local legislators if it objects to legislation such as this. Perhaps the judges should make certain that such legislation is within the means of the local government and actually necessary before they seek it. With Amendment 55 a local legislative body now exists with new power and responsibility over local officials and the expenditure of money. That body is anxious to exercise the power and responsibility. Judicial officers who, before Amendment 55, were able to obtain their needs through the county judge and local legislators now find themselves, just as all local officials do, having to humbly request funds from the quorum court. Sometimes the quorum courts do not act maturely.

It does not serve the best interests of the judiciary, local government, or state government to allow the conflict between local authorities and judges to continue. I believe a solution lies in encouraging the legislature and the judiciary to approach the problems of the circuit and chancery courts in a uniform manner. As this case illustrates, now the matter is approached on a piecemeal basis with local legislation. This will not stop until the legislature stops treating each court individually. Perhaps that will not happen until the

judges stop asking. The counties, particularly Pulaski, which has an abundance of trial judges and court employees, should join in this effort, not in an attempt to avoid their rightful burden of the cost of local justice, but to find a fair resolution of a problem that will not improve if ignored.

There should be uniform treatment of the courts statewide. The legislature should determine how many employees are needed for each circuit and chancery court, declare it so, and pay them or pay part of the expense and order the counties to pay the remaining amount. Any other employees deemed necessary by the judges should be obtained and paid for locally. The needs of the judiciary would thus be met and judges would not have to beg. The quorum courts would have to pay certain expenses locally and would do so without quibbling. The friction between the two would stop. The General Assembly has the power to do this because it decides the number and geography of the circuit and chancery courts. In 1977 reapportionment equalized case loads and the geographical areas of the circuits. Act 432 of 1977.

Our decision has resolved nothing of importance; but, as a result a great deal could and should be resolved.

JOHN I. PURTLE, Justice, dissenting. In my opinion this court has lately been headed in the right direction on matters relating to special and local legislation. I agree with the opinions in *Mears* v. *Adkisson,* 262 Ark. 636, 560 S.W.2d 222 (1978) and *Beaumont* v. *Adkisson,* 267 Ark. 511, 593 S.W.2d 11 (1980). I think the trial court decided the present case consistent with *Mears* and *Beaumont.* We all agree that the General Assembly may lawfully delegate some of its power. Our differences arise on the question of whether Act 591 of 1981 exceeds the bounds of lawful delegation. The majority think it does and I think it does not.

The power here delegated is about as little as can be found and still qualify as delegation. The only power delegated to the circuit judges by Act 591 is the place on the salary scale where their employees are to be placed. There is an upper and a lower limit. This is the same type of power

granted to other agenices. Discretion is given to state agencies to place their employees at appropriate levels of the pay scale provided by the legislature. In *Beaumont* there was no ceiling on the salaries or the number of employees. Also, the delegation was only to a part of the circuit judges within the Judicial District. In *Beaumont* we stated: "The only way that Act 629 could be legal is if it were held to be an act relating generally to all the circuit courts in the Sixth Circuit and it is determined to be essential to the administration of justice." Act 591 does apply to all courts within the Sixth Circuit.. In these modern days there is no doubt in my mind that probation officers and bailiffs are essential to the administration of justice. Without them it could become nearly impossible to conduct orderly trials and keep track of those serving probation and suspended sentences.

Amendment 55, Section 1 (a) to the Constitution of the State of Arkansas provides that Quorum Courts "may exercise local legislative authority not denied by the Constitution *or by law*." [Emphasis added.] In the present case the legislature has provided by law that the circuit judges determine the level of pay for certain officers. Act 742 of 1977 [Ark. Stat. Ann. §§ 17-3101 et seq. (Repl. 1980)] implemented Amendment 55 and specifically states that Quorum Courts must operate within the limitations established by law. More specifically Quorum Courts "shall perform such legislative duties as may be *prescribed by law*." [Emphasis added.] Ark. Stat. Ann. § 17-3601 (b). The county in this case had been directed by law to set the salaries here in question as determined by the circuit judge. County governments are prohibited from exercising any power in any manner inconsistent with state law. Ark. Stat. Ann. § 17-3805(m). Therefore, the Quorum Court ordinance setting these salaries at levels other than what the judge ordered is contrary to state law and is void.

We dealt with the "local and special" issue in *Littleton* v. *Blanton*, 281 Ark. 395, 665 S.W.2d 239 (1984) when we stated:

The Legislature has traditionally met the growing judicial needs of an area by statutes which apply only to

individual counties, judicial districts or even divisions within districts. But these statutes have not been held to be "local or special" within the meaning of Amendment 14, since they were part of a judicial system for the entire state . . . We will continue to hold that statutes designed to meet the judicial needs of an area on a non-discriminatory basis are a part of a judicial system for the entire state and are not local and special within the meaning of Amendment 14, even though such statutes may apply only to individual counties, judicial districts or divisions within districts.

We held in *Littleton* that an act is not local or special unless the class it establishes has no reasonable relation to the purpose or subject matter of the act or it exempts its operation from persons or areas which would fall naturally within the area of the act. It is my opinion that the class created by the Act here in question has a reasonable relation to the subject matter of the Act and makes no exemptions otherwise falling within its ambit.

I do not find it necessary to consider whether the circuit courts have inherent power to order such payments as being necessary to the administration of justice because the General Assembly enacted a state law authorizing the circuit judges to establish the salary of those employees. The upper and lower limits were established. The judges were authorized to fix the salary within the delegated authority. The Quorum Court was defying a state law and should not be allowed to do so. The Sixth Judicial District consists of Perry and Pulaski Counties. Suppose the counties cannot agree on a salary?

For the reasons set out above and those contained in the majority opinion I would affirm the trial court.