The Honorable Tom Wynne Prosecuting Attorney Thirteenth Judicial District P.O. Box 231 Fordyce, Arkansas 71742
Dear Mr. Wynne:
This is in response to Chief Deputy Prosecuting Attorney Pat Jackson Compton's request for an opinion on several questions concerning the collection of court costs and fines in the municipal court of Union County, Arkansas. Specifically, the questions refer to a proposed contract to be entered into with a private collection corporation for the collection of fines and costs assessed in the municipal court. The questions will be restated and answered below.
The first question is as follows:
 1. Is it constitutional to use a portion of the statutorily assessed court costs to pay a private collection agency its fee for collection of delinquent fines and/or costs?
It is my opinion that no constitutional provision is implicated in the action suggested. The question is, rather, one governed by statutory provisions. This office has previously issued an opinion stating that a quorum court could not enter into a contingency fee contract with a private attorney to collect fines and costs in municipal court, because by statute, this function was assigned to the chief of police. See A.C.A. § 16-17-214 and Opinion No. 88-003, a copy of which is enclosed. Constables and sheriffs are also responsible for collecting some fines arising from the municipal court. A.C.A. § 16-17-215. (See also A.C.A. § 16-17-119, for different requirements regarding municipal courts in counties with populations of two hundred and fifty thousand or more.) As recently as this year, however, the Arkansas General Assembly apparently added an alternative procedure. Act 447 of 1991, which is now codified at A.C.A. §16-17-127 (Cum. Supp. 1991), contemplates municipal courts contracting with private "persons," including corporations, for the collection and enforcement of fines and costs. Although that statute does not grant express authority to engage in such contracting (it merely requires the contractees to be registered and bonded), it does envision that such contracting will occur, or at least impliedly sanctions its legality, and in my opinion assumes that such private entities will be compensated in some fashion. This statute enjoys a presumption of constitutionality.Stone v. State, 254 Ark. 1011, 498 S.W.2d 634 (1973). We can find no constitutional or statutory provision which would prohibit the consideration for the contract from being taken from statutorily assessed costs.[1] Many of these costs are to be used to defray expenses of the municipal court or for the "administration of justice." See, e.g., A.C.A. §§ -16-17-109 (Cum. Supp. 1991), 16-17-111 (Cum. Supp. 1991), 16-17-113 (Cum. Supp. 1991), 16-17-124 (Cum. Supp. 1991), 16-17-125 (Cum. Supp. 1991), and 16-17-126 (Cum. Supp. 1991). It is my opinion that the expenses of collecting the costs would fall within either of these authorized uses of the funds and as such, the payment of a percentage of these types of costs to the private contractor collecting them would not appear to be violative of the statutes.
Your second question is as follows:
 Does a Quorum Court have the constitutional authority to dictate to a Municipal Court the means which it must use to collect fines and/or costs?
Although the issue is not entirely clear, and may to a degree depend upon the facts surrounding the administration of a particular municipal court, it is my opinion that the answer to your question is, in all likelihood, "no."
Amendment 55 to the Arkansas constitution provides that quorum courts "may exercise local legislative authority not denied by the Constitution or by law." Ark. Const. amend. 55, § 1(a). Under this provision, quorum courts have authority to legislate onlocal matters, if such authority is not denied by law. It has been held, under this provision, that a circuit court and its employees are not a "local matter," and as such, a quorum court has no authority to legislate regarding the expenses of such courts. Venhaus v. State, 285 Ark. 23, 684 S.W.2d 252 (1985). It is unclear, however, whether quorum court legislation affecting municipal courts would be deemed a "local matter." I have found no Arkansas case law determining this issue. But seegenerally, Crawford County v. City of Van Buren, 201 Ark. 798,146 S.W.2d 914 (1941). Municipal courts are funded locally, but then so are circuit courts. See generally Abbot v. Spencer,302 Ark. 396, 788 S.W.2d 743 (1990) (Glaze, J. concurring). A court faced with the question might determine that such courts are local courts, or it might in my opinion determine that these courts are a part of the state judicial system of Arkansas, which is a "composite whole," and as such are "state courts." Seegenerally Littleton v. Blanton, 281 Ark. 395, 400,665 S.W.2d 239 (1984).
In any event, a quorum court cannot exercise its local authority if to do so is otherwise "denied by law." In my opinion, A.C.A. §16-17-127, cited earlier, may stand as some authority that quorum courts are denied the power to legislate on the question of retaining a private firm to collect costs and fines for municipal court. That statute contemplates that the municipal court itself will enter into the contract, "upon approval of the governing body or governing bodies exercising control over the municipal court." The statute does not envision the "governing body" or quorum court, as the case may be, initiating the decision to contract for the private collection of fines and costs.
Additionally, A.C.A. §§ 16-17-214 and -215 assign the responsibility for the collection of these fines and costs to the chief of police and, in some instances, the sheriff and constables. These duties are mandatory, and thus any contrary procedure enacted pursuant to quorum court ordinance would be contrary to state law, unless authorized by another statute. Again, it is my opinion that A.C.A. § 16-17-127 does not grant a quorum court this authority.
A quorum court ordinance on this topic also leaves out any involvement in the decision by the city governing body or bodies served by the municipal court. Many statutes governing control over municipal courts envision some type of shared power between the county and municipalities involved. It is my opinion, additionally, that the separation of powers doctrine found at Arkansas Constitution, Article 4, § 2 may also be implicated.See also Ark. Const. art. 7, §§ 1 and 4. Again, the issue is not clearly answered by the constitution or by statute, but it is my opinion and prediction that the Arkansas Supreme Court would deny the sole authority of a quorum court to dictate to a municipal court the method it must use to collect delinquent fines and costs.
Your third question is as follows:
 When a fine and costs are assessed in a Municipal Court it is a judgment. A civil judgment is valid for ten (10) years. How long is the judgment valid on the fines and costs assessed in Municipal Court?
This is another question which is not clearly answered under current Arkansas law. The ten year limit which you reference is found at A.C.A. § 16-56-114, and it provides that "(a)ctions on all judgments and decrees shall be commenced within ten (10) years after cause of action shall accrue, and not afterward." The judgment can be renewed for successive periods of ten years, indefinitely. Brimer v. State, 295 Ark. 20, 746 S.W.2d 370
(1988). This statute, however, has been held to have no applicability to criminal proceedings. Stocks v. State,171 Ark. 835, 286 S.W. 975 (1926).
Two other statutes governing the issue are A.C.A. §§ 16-92-102
and 5-4-204. The former provides as follows:
 (a) The clerk of the court, at the end of each term, shall issue executions of all fines imposed on indictments, in penal actions, or otherwise, and for the costs of conviction in criminal cases during the term, and remaining unpaid, which shall be executed in the same manner as executions in civil cases. The property of the defendant may be seized and sold, notwithstanding that he may be in custody for the same demand. (Emphasis added.)
The latter statute governs collection after default, and states that:
 (a) When a defendant sentenced to pay a fine or costs defaults in the payment thereof or of any installment, the fine or costs may be collected by any means authorized for the enforcement of money judgments in civil actions.
 (b) A judgment that the defendant pay a fine or costs shall constitute a lien on the real and personal property of the defendant in the same manner and to the same extent as a money judgment in a civil action. (Emphasis added.)
The first statute, § 16-92-102, and the first section of the second statute, § 5-4-204(a), each provide that these criminal judgments for costs and fines may be executed, collected, and enforced in any manner that civil judgments are so executed. These provisions do no [not] precisely speak to the issue of the longevity of such judgments, they only govern the authorized method of enforcement. For example, A.C.A. § 16-92-102(a) provides that these judgments shall be executed upon at the end of each term. It does not state, however, how long the actual judgment remains effective should the execution prove unfruitful. Additionally, Section 5-4-204(b) states that the lien of a criminal judgment for fines and costs is a lien "in the same manner and to the same extent as a money judgment in a civil action." Another statute, A.C.A. § 16-92-101, also provides for a lien on the property of the defendant and requires the county judge to file a lis pendens and institute an action on the lien within two years.
The question is whether these provisions, which equate criminal judgments for costs and fines with civil judgments, impute a ten year survival rate on criminal judgments, or whether there is no limit imposed on the validity of criminal judgments for fines and costs.
It is my opinion that the ten year "statute of limitations" on civil judgments has no applicability to criminal judgments for fines and costs. I cannot infer from the language of the statutes above that the legislature intended to restrict collection of these judgments to ten years unless the officials charged with their collection institutes [sic] proceedings to renew the judgments. The language of the statutes above is simply not strong enough to conclude that the legislature intended to impose this limitation on the administration of the courts themselves. There is some case law authority to support this conclusion. Seegenerally State v. Stocks, supra, and Western Tie TimberCo. v. Campbell, 113 Ark. 570, 269 S.W. 253 (1914). It should be noted, however, that the lien on the property of the defendant must be enforced within two years. See A.C.A. §16-92-101.[2]
Your fourth question is as follows:
 If it is constitutional for a collection agency to collect delinquent fines and costs, what confidentiality guidelines or Freedom of Information guidelines should the employees of the private contractor work under?
The Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. § 25-19-101 et seq., applies to "public records," which are defined in the act as records:
 required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. (Emphasis added.)
It is my opinion that the records of the collection agency in this instance would be subject to disclosure under the FOIA. This office has previously opined that where a private entity receives public funds, and enjoys a "symbiotic relationship" with the government, its records are open to inspection. See Opinion No. 83-163. It was stated therein that: "(w)hen the activities of a private organization and the government become intertwined, the private organization may well render itself part of the State for (FOIA) purposes." See Opinion No. 83-163 at 4. It has been stated that "(p)ut in a somewhat different manner, when the state or one of its political subdivisions attempts to conduct its affairs through private entities, those entities are for all practical purposes the government itself, and the FOIA should apply." Watkins, The Arkansas Freedom of Information Act (m m Press 1988) at 30. It has also been stated that "an organization's receipt of public funds coupled with its use of those funds to carry out a governmental function makes a private entity fall within the provisions of Arkansas' FOI." See
Opinion No. 85-029 at 3.
It is my opinion that the private collection agency in issue here would be performing a public function which ordinarily would be performed by governmental officials. See A.C.A. § 16-17-214. The collection of these fines and costs comes within the definition of the "public business," (see A.C.A. § 25-19-102), and the public has an interest in overseeing the efforts expended toward this end. See generally Rehab Hospital Services Corp. v.Delta-Hills Health Systems Agency, Inc., 285 Ark. 397,687 S.W.2d 840 (1985). As such, the records of the private collection agency would be subject to inspection under the Arkansas FOIA, and in response to your question, this act comprises the "guidelines" that the private contractor should work under in performing its contract.
Your fifth question is as follows:
 Can the employees of a collection agency have the same access to the Court system as deputy clerks without being sworn in as deputy clerks?
In response to your question, it appears that most of the court system records would be public documents, and thus the employees of the agency would have the same right to access them as any other citizen. The extent to which these private employees are granted more liberal access to records may be governed by contract. A problem arises, however, with respect to records to which the public would not otherwise have access, e.g., Arkansas Crime Information Center records, records of convictions which have been expunged, and any other records closed by order of court. Allowing the private employees access to these types of records may violate the various statutes governing their confidentiality. It may be that the private employees do not need access to these records, or for that matter, any records other than those showing the personal information (i.e., name and address of the obligor), and the amount owed. In any event, the issue can be controlled by contract with the applicable statutes in mind.
Your sixth and final question, which appears in a separate letter, is as follows:
 If a private collection agency charges a percentage to collect both delinquent fines and court costs, may that percentage be taken both from the fines and court costs? Is it legal to take a percentage of delinquent fines once they are collected?
It is my opinion that there is no provision of the constitution or the statutes which would prohibit the taking of a percentage of the collected fines by a private collection agency. Section16-17-127, however, does contemplate the contracting with private firms to collect these fines. In my opinion, this statute assumes that these private contractors will be compensated in some fashion. I can find no provision of law which would prohibit this compensation from being in the form of a percentage of the fines. The fines will either be credited to the county treasury for general county purposes, or to the city for the maintenance of city courts. A.C.A. § 16-92-113. While the statute requires that the fines be deposited into the county treasury, it would not thereafter prohibit the treasurer from transferring the percentage due to a collection agency. The county or city, or both, at least in some fashion, will be responsible for the collection of these fines, whether it is done by governmental officers or private contractors. It is thus my opinion that the statutes do not prohibit the use of the funds raised by fines to pay a private contractor to collect delinquent fines. This purpose is within the uses authorized by the statute, that is, the funds will be used for "general county purposes" or for the maintenance of the city court.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] It should be noted, however, that some costs are designated for specific purposes by statute. Some of these collected funds even become trust funds. See, e.g., A.C.A. § 16-92-110. It is my opinion that these funds, that is, funds directed to a particular fund or purpose, may not be diverted from their statutorily assigned purposes. See generally A.C.A. §16-17-119.
[2] It is unclear to what extent A.C.A. § 5-4-204, a 1975 statute, amends or impliedly repeals A.C.A. § 16-92-101, an earlier provision, as regards the necessity of filing a lis pendens and filing an action with [within] two years.