The Honorable Roger Norman, JD, CPA, CFE Legislative Auditor Division of Legislative Audit 172 State Capitol Little Rock, Arkansas 72201-1099
Dear Mr. Norman:
I am writing in response to your request for an opinion on four questions concerning the establishment of drug courts. As an initial matter, you state the following pertinent facts:
 Drug courts are specialized court dockets operating within the existing structure of the state's court system. Ark. Code Ann. § 16-98-302(c)(1). Each of the state's judicial districts is authorized to establish a drug court. Id. § 16-98-303(a)(1). The structure, method, and operation of each drug court may differ among judicial districts. Id. § 16-98-303(a)(2)(A).
 After initiating the Columbia County Adult Drug Court Program ("CCADC"), the Columbia County Circuit Court applied for funding under the U.S. Department of Justice's Drug Court Discretionary Grant Program.[1] A grant in the amount of $450,000 was awarded in 2005 for the purpose of implementing *Page 2 
the CCADC; the project start date was October 1, 2005 and its end date is September 30, 2008.
 In 2006, the Circuit Judge implementing the CCADC received and deposited $59,136 of these grant funds into a bank account maintained by the Circuit Judge outside of the county treasurer's control. Grant funds have been expended without appropriation by the Arkansas General Assembly or the Columbia County Quorum Court. [Footnote omitted.]
 One expenditure is particularly problematic. The Circuit Judge hired two part-time employees to work in the CCADC with these funds. Julia Wilson, Area Drug Court Receives $450,000 Grant, South Arkansas Sunday News, February 5, 2006, at 6A. There is no indication that the General Assembly authorized these positions or appropriated funds for compensation. The Circuit Judge's action would thus appear contrary to Ark. Const. art. 16, § 4, which "unequivocally grants the General Assembly the authority to determine the number of employees of the departments of the State." Op. Att'y Gen. no. 2004-209 (August 6, 2004); cf. Abbott v. Spencer, 302 Ark. 396, 398, 790 S.W.2d 171 ___ (1990) (citing Ark. Const. art. 16, § 4 for the proposition that "[t]he legislative branch is to fix the amount of salaries"). Similarly, if these two employees are deemed county employees, there is no indication the Columbia County Quorum Court fixed their positions and compensation, as required by Ark. Const. amend. 55, § 4.
You pose four questions regarding these facts, as follows:
 1. Can a Circuit Judge receive, administer, and expend grant or other funds to implement a drug court program, in light of the separation of powers doctrine as set forth in Ark. Const. art. 4, §§ 1 and 2?
 2. Can a Circuit Judge hire employees to work in a drug court program, where those positions and their compensation have not been fixed by the Arkansas General Assembly, as required *Page 3 
by Ark. Const. art. 16, § 4, or by the proper county quorum court, as required by Ark. Const. amend. 55, § 4?
 3. If a Circuit Judge may receive, administer, and expend grant or other funds, must an appropriation of those funds be made by either the Arkansas General Assembly or the proper county quorum court?
 4. Do you perceive any other legal issues raised by the facts presented?
You also note, in your background information, that "[a]lthough the Circuit Judge's actions outlined herein occurred in 2006, please note that Act 1022 of 2007 addresses some of these actions. Appropriation, funding, and positions must now be available before circuit judges can order drug court services. Ark. Code Ann. § 16-98-303(a)(3). The adult drug court positions are to be filled by Department of Community Correction personnel. Id. § 16-98-305(1)." In this regard,Act 1022 of 2007 substantially amended the "Arkansas Drug Court Act."
RESPONSE
I cannot offer a definitive answer to your first question regarding the separation of powers doctrine, because it involves determinations of fact and a review of the statutory scheme in effect at the time of the relevant actions. In response to your second question, employees hired by a circuit judge with federal grant funds under the circumstances you describe would in my opinion likely be deemed state employees. If so, Arkansas Constitution, art. 16, § 4 requires the General Assembly to create their positions and set their salaries. In response to your third question, the current Arkansas Drug Court Act now clearly requires an appropriation of funds. The answer under prior law is not as clear. It does not appear, however, that pre-2007 law contained any appropriation requirement for such funds at the state level. In response to your fourth question, the Legislative Auditor is charged with the duty, in performing audits of state entities, to "[c]all attention to any funds, which, in his or her opinion, have not been expended in accordance with the law. . . ." I am not authorized to perform this duty. *Page 4 
Question 1 — Can a Circuit Judge receive, administer, and expendgrant or other funds to implement a drug court program, in light of theseparation of powers doctrine as set forth in Ark. Const. art. 4, §§ 1and 2?
Your first question is drafted broadly and in the present tense, asking whether "a" circuit judge can receive and administer funds in connection with a drug court program in light of the separation of powers doctrine.[2] The wording of your question indicates that it has reference to any circuit judge acting under the provisions of current law. I assume, however, from your detailed recitation of facts concerning the Columbia County Adult Drug Court Program, and your duty to conduct audits of state entities, that your question is asked with regard to that particular drug court program, and the actions of that particular Circuit Judge under the law before it was amended in 2007.
This fact creates difficulty in addressing your question for two reasons.
First, I am uncertain as an initial matter, against which statutory backdrop to analyze this question. Although your first question involving the separation of powers doctrine is one of constitutional dimensions, it is clear that former statutory law (in effect during the time of the Circuit Judge's actions), and current statutory law (as amended by Act 1022 of 2007), authorize the creation of drug court programs and sanction a circuit judge's participation to some degree in that effort. See A.C.A. § 16-98-301 to-307 (Repl. 2006 and Supp. 2007). Statutory authority thus exists for judicial districts to create such programs. As a consequence, any analysis of the constitutionality of a circuit judge's actions in this regard could not be undertaken in the abstract, but must thus be undertaken in light of, and with the presumptions of constitutionality attendant to, a statutory scheme adopted by the legislature. I am uncertain, however, from the wording of your first question, whether to analyze the constitutional issue under prior law, under current law, as it exists after the passage ofAct 1022 of 2007, or both. *Page 5 
Second, the resolution of your first question will involve determinations of fact. See generally, Walker v. Washington County,263 Ark. 317, 564 S.W.2d 513 (1978) (stating that "[w]hether there is an infringement upon the separation of powers . . . depends upon the facts of each case"). As I and my predecessors have stated many times, the Attorney General is not empowered as a fact-finder in the issuance of Attorney General opinions. See, e.g., Ops. Att'y Gen. 2007-060 and 2007-029. If your question is posed generally, with regard to any circuit judge creating a drug court program, the current state statutes and the myriad facts and circumstances surrounding the actions of the circuit judge in question would have to be evaluated in order to address the constitutional issue you pose. If your question is posed with regard to the actions of the particular Circuit Judge you describe in Columbia County, the answer must be determined with reference to the statutory scheme in effect at the time the actions were taken (under prior law), and in light of the exact actions undertaken by the Circuit Judge. I cannot undertake such a factual review in the context of an advisory opinion.
Question 2 — Can a Circuit Judge hire employees to work in a drugcourt program, where those positions and their compensation have notbeen fixed by the Arkansas General Assembly, as required by Ark. Const.art. 16, § 4, or by the proper county quorum court, as required by Ark.Const. amend. 55, § 4?
This question focuses more narrowly on one fact — the absence of legislatively prescribed salaries for the employees in question — and inquires as to whether that fact transgresses either of the two constitutional provisions you cite. Again, I am not empowered as a fact-finder, and cannot make the determination under A.C.A. § 10-4-407
of whether the circuit judge's conduct was not in accordance with law. I can state as a general matter, that in my opinion, employees hired by a circuit judge with federal grant funds under the circumstances described in your request and accompanying correspondence would in all likelihood be deemed state employees. If so, Article 16, § 4 requires the Arkansas General Assembly to create their positions and set their compensation.
As an initial matter, employees hired by a circuit judge under the facts you describe would in all likelihood be considered state, rather than county employees. Although it may involve considerations of fact, a circuit court and its employees are generally considered a state, rather than a local matter. Venhaus v. State, 285 Ark. 23, 684 S.W.2d 252
(1985). Cf. also generally, South Central Arkansas Drug Task Force v.Ray, 56 Ark. App. 30, 937 S.W.2d 682 (1997) (employee of *Page 6 
drug task force was a state employee for workers' compensation purposes where prosecuting attorney directed the task force and employee's position was funded through federal grants and state matching funds handled through the State Treasury); Ops. Att'y Gen. 2000-105 (victim witness coordinators employed by prosecuting attorneys and funded by federal grants funds handled by DF A were likely state employees for retirement purposes); 97-359 (federal grant-funded personnel hired by circuit judge for county Juvenile Services Department positions, if they were employees rather than independent contractors, would likely be classified as state employees for retirement purposes); and 88-391 (investigators and employees hired by prosecuting attorney with federal and state matching grants handled through DF A are likely state employees for state insurance and retirement benefits).
If the employees are state employees, Arkansas Constitution, art. 16, § 4 is applicable. It states that:
 The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law.
(Emphasis added). See also, A.C.A. § 19-4-1601 (Repl. 1998).
If the employees are state employees, therefore, the General Assembly and not the circuit judge, is the appropriate entity to create the positions and set the salaries.
A similar issue regarding setting of court employee salaries was discussed in Abbott v. Spencer, 302 Ark. 396, 790 S.W.2d 171 (1990). At issue in Abbott was a 1989 Act that authorized the circuit/chancery judge to appoint a probation officer and an intake officer. The Act failed to set any salaries for the employees. The judge issued an order setting the salaries at a certain level, but the members of the quorum court (which was responsible for funding a portion of the salaries), voted to pay less than the amount set. The circuit/chancery judge ordered the quorum court members to show cause why they should not be held in contempt for not paying the salaries set by the judge. The quorum court members petitioned the *Page 7 
Arkansas Supreme Court for a writ of prohibition. The Arkansas Supreme Court granted the writ, stating:
 The Constitution of the State of Arkansas provides for three separate but equal branches of government. Ark. Const. Art. 4, 1. The legislative branch is to fix the amount of salaries. Ark. Const. Art. 16, 4. One branch of government shall not exercise any power belonging to another branch, except as expressly permitted by the constitution. Ark. Const. Art. 4, 2. Thus, judges do not have the authority to set salaries of court personnel, unless that authority has been properly delegated to them by the legislative branch.
Id. at 398, citing Venhaus v. State, 285 Ark. 23, 684 S.W.2d 252 (1985); and Pulaski County ex rel. Mears v. Adkisson, 262 Ark. 636,560 S.W.2d 222 (1978).[3]
As a consequence, to the extent the employees about which you inquire are considered state employees, a condition I deem likely, their salaries must either be prescribed by the General Assembly, or set by the circuit judge after a proper delegation of legislative authority in this regard.[4]
Question 3 — If a Circuit Judge may receive, administer, and expendgrant or other funds, must an appropriation of those funds be made byeither the Arkansas General Assembly or the proper county quorumcourt? *Page 8 
I assume this question has reference to the operation of a "drug court." Again, if your question refers to circuit judges in general, and to the provisions of existing law, the answer is clearly "yes," because as you note, Act 1022 of 2007 amended the "Arkansas Drug Court Act" to require such appropriations. See A.C.A. § 16-98-303(a)(3) (Supp. 2007).
If your question refers to the particular Circuit Judge you reference in Columbia County, and under the provisions of prior law, the question is not so clear. Again, I cannot answer the factual issue raised in your first question concerning whether a judge can "receive, administer, and expend grant funds" under the separation of powers doctrine. Assuming that a circuit judge's particular actions in that regard are not proscribed by that constitutional doctrine, the "Arkansas Drug Court Act," prior to its amendment in 2007, did not expressly mention or require an appropriation of any available funds.
Again, I am not empowered as a fact-finder. I thus cannot state definitively to what extent each entity, the Arkansas General Assembly, or the local quorum court, would be responsible for appropriating funds for such program (if an appropriation was required). In my opinion, however, assuming the limited involvement of the County in the application for and administering of the federal funds (as described in your request and attached documents), it appears that the most relevant entity in this instance would be the Arkansas General Assembly.
As a general matter, the Arkansas Constitution only requires an appropriation with respect to funds placed in the State Treasury.See Arkansas Constitution, art. 5, § 29 ("No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years"); and art. 16, § 12 ("No money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation.") As stated in Op. Att'y Gen.99-124:
 There is no requirement that all public money be paid into the state treasury, but once placed in the treasury, it may not be removed except by legislative appropriation. See Gipson v. Ingram, 215 Ark. 812, 223 S.W.2d 595 (1949) ("[t]here is no language in our present Constitution which requires that all of the *Page 9 
public money shall be paid into the state treasury." The `present Constitution requires only that money in the treasury shall not be removed except by legislative appropriation").
Id. at 3.
Notwithstanding the lack of a constitutional appropriation requirement for funds held outside the state treasury, Arkansas statutory law nonetheless requires an appropriation before most state entities may expend "cash funds." See A.C.A. §§ 1 9-4-801 to-816 (Repl. 1998 and Supp. 2007). "Cash funds" are defined as "all moneys, negotiable instruments, certificates of indebtedness, stocks, and bonds held by or owned by any state agency which are not on deposit with or in the trust of the State Treasurer. . . ." Circuit courts and circuit judges are specifically exempted from the provisions of this subchapter, however. See A.C.A. § 19-4-801(2)(B)(viii) (Supp. 2007).
I thus cannot conclude, prior to the adoption of Act 1022 of 2007, which amended the "Arkansas Drug Court Law" in this regard, that any legal requirement for an appropriation of these funds existed at the state level.[5]
Question 4 — Do you perceive any other legal issues raised by thefacts presented?
To the extent you are inquiring as to the lawfulness of the actions of the Circuit Judge in Columbia County, I will note that it is the duty of the Legislative Auditor, in performing audits of state entities, to: "[c]all attention to any funds which, in his or her opinion, have not been expended in accordance with the law, appropriation, ordinance, regulation, or other legal requirement. . . ." A.C.A. § 10-4-407 (Supp. 2007) (emphasis added). The Legislative Auditor is given a number of powers to aid in the performance of this duty. See, e.g., A.C.A. §10-4-416 (Supp. 2007) (access to records); and A.C.A. § 10-4-421
(subpoena power). Any determination in this regard is therefore placed within your discretion. I am neither statutorily empowered nor equipped to perform this function through an advisory opinion. *Page 10 
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] You note, in the footnotes to your background information, that some dispute exists as to the entity serving as the grant applicant. You state that the Circuit Judge maintains that the grant applicant is the CCADC, but you reference a United States Department of Justice website listing the type of applicant for this particular grant as a "county." Federal law was apparently amended in 2002 to authorize "the judge of a local court" to submit an application. See 42 U.S.C. § 3797u-4, as amended by P.L. 107-273 (2002); and 28 C.F.R. § 93.4.
[2] Arkansas Constitution, art. 4, §§ 1 and 2 provide respectively that: "The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another" and "No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted."
[3] The Venhaus case involved a 1981 Act setting a range within in which circuit judge could set probation officers salaries, but the act contained no grades or steps based upon training, education or experience. The Arkansas Supreme Court held that the act was unconstitutional as vesting unbridled discretion in the circuit judge. The court in Venhaus also rejected the circuit judge's argument that he had "inherent authority" to set the salaries where the evidence did not indicate that the probation officers were "absolutely essential" to the operation of the court.
[4] The "Miscellaneous Federal Grant Act," codified at A.C.A. §§19-7-501 — 504 (Repl. 1998 and Supp. 2007), provides some authority for the heads of "state agencies" to request the approval of the Governor and Chief Fiscal Officer of the State for additional appropriations for one or more new or additional salaried positions in the event new or additional federal funds become available that were not contemplated in the agency's biennial appropriation act. I am uncertain, as a factual matter, whether this Act is applicable under the facts you describe.
[5] See also, however, A.C.A. § 19-4-1901 to-1908 (discussing procedures relative to federal grants received by "state agencies"). As with the "Miscellaneous Federal Grant Act" discussed supra, n. 4, I am uncertain whether this subchapter is applicable to the facts you describe.