Charles S. Campbell, Pharm. D. Executive Director Arkansas State Board of Pharmacy 101 E. Capitol, Suite 218 Little Rock, Arkansas 72201
Dear Dr. Campbell:
I am writing in response to your recent request for my opinion on the following five (5) questions:
 1. Does the definition of "related techniques" in Ark. Code Ann. § 17-102-102(6) or any other section in the Arkansas Acupuncture Practices Act authorize licensees of the Arkansas State Board of Acupuncture and Related Techniques to prescribe legend drugs for their patients?
 2. If licensees of the Acupuncture Board do not have authority under Arkansas law to prescribe legend drugs for their patients, do the provisions of Ark. Code Ann. §§ 17-92-101(16)(A)(i)(a), 20-64-506(a) and Board of Pharmacy Regulation 08-00-0004 also prohibit Acupuncture Board licensees from wholesale purchases of legend drugs for in-office use?
 3. Does the "Scope of Practice" described in Title I (B) of the Rules and Regulations of the Arkansas State Board of Acupuncture and Related Techniques authorize Acupuncture Board licensees to prescribe or purchase legend drugs? *Page 2 
 4. If the Acupuncture Practice Act does not expressly authorize its licensees to prescribe or purchase legend drugs, may the Arkansas State Board of Acupuncture and Related Techniques promulgate a rule authorizing or permitting its licensees to prescribe or purchase legend drugs?
 5. If licensees of the Acupuncture Board do have authority under Arkansas law to prescribe legend drugs for patients and for in-office administration, are they also authorized to prescribe controlled substances, as defined by the Arkansas Uniform Controlled Substances Act, Ark. Code Ann. § 5-64-101, et. seq, and federal law, Title 21 U.S.C. § 800, et. seq; Title 21 C.F.R. Part 1300 et. seq?
As background for your request, you state:
 The Board of Pharmacy has received inquiries recently regarding the prescriptive authority of Doctors of Oriental Medicine ("D.O.M"), who are licensed by the Arkansas State Board of Acupuncture and Related Techniques under the Acupuncture Practices Act, Ark. Code Ann. § 17-102-101 et seq. As you can see from the enclosed redacted dispensing records, which were provided by an Arkansas-licensed pharmacist, at least one D.O.M. has been prescribing numerous prescription or "legend" drugs for his patients and purchasing legend drugs for in-office use.
 Under the Pharmacy Practice Act, Ark. Code Ann. § 17-92-101, et seq, licensees of the Board of Pharmacy are permitted to dispense or ship legend drugs only upon the "prescription and order of a practitioner authorized by law to prescribe[.]" Ark. Code Ann. § 17-92-101(16)(A)(i)(a); see also, Ark. Code Ann. § 20-64-506(a) (permitting wholesale distribution of legend drugs only to authorized prescribers and licensees).
I would like to note, as an initial matter, that the purpose of an Attorney General's Opinion is not to make public policy for the state of Arkansas. Rather, the purpose of an Opinion is to provide an explanation of the law as it currently exists. During the pendency of this request, my office has received a number of communications from interested citizens and officials, including doctors of *Page 3 
oriental medicine, patients of doctors of oriental medicine, and medical doctors. The purpose of many of these communications has been to explain the quality and utility of the care that doctors of oriental medicine provide. While these communications are certainly compelling, they cannot affect my opinion of what the law currently provides. It is for the legislature to make public policy determinations.
RESPONSE
It must be noted from the outset that the Arkansas Acupuncture Practices Act (the "Act") itself is vague on the scope of a licensee's practice. For this reason, it is very difficult to provide definitive answers to your questions. Legislative clarification of this statutory scheme is warranted.
In response to your first question, in my opinion, the Act probably does not authorize licensees of the Arkansas State Board of Acupuncture and Related Techniques ("licensees") to prescribe legend drugs for their patients. In response to your second question, I do not believe that the provisions cited apply directly to licensees. In response to your third question, it appears that the cited regulations purport to authorize licensees to prescribe and/or administer certain listed types of medication, regardless of whether those medications qualify as legend drugs. In response to your fourth question, it should first be noted that whether the Act expressly authorizes the activities described is not dispositive, as the legislature may properly delegate some authority to the board. However, based on the statutory language, it is my opinion that the Act probably does not contemplate either the ability to prescribe legend drugs or the ability to purchase legend drugs for in office administration. For this reason, it is my opinion that the regulations which allow licensees to engage in such activities could be found ultra vires of the Act. In response to your fifth question, in light of my responses to questions one (1) and four (4), it is my opinion that licensees are not authorized to prescribe or administer controlled substances.
Question 1: Does the definition of "related techniques" in Ark. CodeAnn. § 17-102-102(6) or any other section in the Arkansas AcupuncturePractices Act authorize licensees of the Arkansas State Board ofAcupuncture and Related Techniques to prescribe legend drugs for theirpatients?
As mentioned in your opinion request, in Arkansas, Doctors of Oriental Medicine/Acupuncturists are licensed under the "Arkansas Acupuncture Practices *Page 4 
Act" found at A.C.A. § 17-102-101 et seq. The Act gives those licensed under its provisions the title of "acupuncturist;" however, it fails to define the permissible scope of a licensee's practice.[1] The Act does, however, set forth the topics to be covered on the licensing exam given by the board, stating:
 Examinations shall be given in English and in writing and shall include the following subjects:
 (1) Anatomy and physiology;
 (2) Pathology
 (3) Diagnosis;
 (4) Hygiene, sanitation, and sterilization techniques;
 (5) Acupuncture and related principles, practices, and techniques; and
 (6) Chinese herbal medicine.
A.C.A. § 17-102-305(a) (2002) (emphasis added).
In addition, the Act defines the terms "acupuncture" and "related techniques":
 (2) "Acupuncture" means the insertion, manipulation, and removal of needles from the body and the use of other modalities and procedures at specific locations on the body for the prevention, cure, or correction of a malady, illness, injury, pain, or other condition or disorder by controlling and regulating the flow and balance of energy and functioning of the patient to restore and maintain health, but acupuncture shall not be considered surgery;
 * * * (6)(A) "Related techniques" means the distinct system of basic health care that uses all allied diagnostic and treatment techniques *Page 5 of acupuncture, Oriental, traditional, and modern, for the prevention or correction of a malady, illness, injury, pain, or other condition or disorder by controlling and regulating the flow and balance of energy and functioning of the patient to restore and maintain health.
 (B) As used in this subdivision (6) "related techniques" include, but are not limited to, acupuncture, moxibustion or other heating modalities, cupping, magnets, cold laser, electroacupuncture including electrodermal assessment, application of cold packs, ion pumping cord, lifestyle counseling, including general eating guidelines, tui na, massage incidental to acupuncture, breathing and exercising techniques, and the recommendation of Chinese herbal medicine lawfully and commercially available in the United States.
A.C.A. § 17-102-101(1) (6) (2002) (emphasis added).
You have asked whether these provisions permit licensees to prescribe legend drugs to their patients. The term "legend drug" is defined by A.C.A. § 20-64-503 as follows:
 "Legend drug" means a drug limited by § 503(b)(1) of the federal Food, Drug, and Cosmetic Act to being dispensed by or upon a medical practitioner's prescription because the drug is:
 (i) Habit-forming
 (ii) Toxic or having potential for harm; or
 (iii) Limited in its use to use under a practitioner's supervision by the new drug application for the drug.
A.C.A. § 20-64-503(6)(A). In laymen's terms, legend drugs are drugs that are available only by prescription. This definition includes substances classified as legend drugs by virtue of their contents (substances that are habit-forming, substances that are toxic or have the potential for harm, etc.).[2] However, this definition also appears to include substances which are classified as legend drugs primarily because of the method in which they are administered, e.g., sterile saline for injection.[3] Because your first question asks about the ability of licensees to *Page 6 
"prescribe legend drugs for their patients," and the substances classified as legend drugs — because of method of administration — would primarily be administered by a licensee in office, my answer to yourfirst question will address only those substances classified as legenddrugs because of their contents.[4] The ability of licensees to obtain substances which are legend drugs by virtue of their method of administration will be dealt with in response to questions two (2) through (4).
It must be noted that the above-quoted statutes have not yet been subjected to judicial interpretation. In my opinion, your questions raise issues that will ultimately require either judicial or legislative clarification in order to be resolved definitively. Until such clarification is rendered, I must interpret the statutory language using the basic guidelines that have been set forth by the Arkansas Supreme Court regarding statutory interpretation. Ops. Att'y Gen. 96-357; 2004-043. The Supreme Court has repeatedly held that the most basic rule of statutory construction is to give effect to the legislature's intent, which should be gleaned from the plain meaning of the words used.Bond v. Lavaca School District, 347 Ark. 300, 64 S.W.3d 249 (2001). The words used are to be given their ordinary and accepted meaning.Mountain Home Sch. Dist. v. T.M.J. Builders, 313 Ark. 661, 858 S.W.2d 74
(1993).
No provision of the Act addresses the prescriptive authority of licensees. It may be noted that neither the word "prescribe" nor any permutation of that word appears in the Act. Moreover, the Act does not contain the term "legend drug," or even the word "drug."
The Act contains two direct references to medication, but in both instances the type of medication referenced is "Chinese herbal medicine." The first such reference appears in the definition of "related techniques," which includes "the recommendation of Chinese herbal medicine lawfully and commercially available in the United States" as an example of a related technique. The second reference to Chinese herbal medicine appears in the section outlining the subjects to be covered on the licensing exam given by the board. *Page 7 
Giving the words their plain meaning, it would be difficult to find that, by referencing the "recommendation of Chinese herbal medicine," the legislature intended for licensees to be authorized to prescribelegend drugs. Moreover, turning to the topics covered on the licensing exam, I note that the exam must cover "Chinese herbal medicine." It is similarly difficult to find that this requires the exam to coverlegend drugs. In my opinion, it seems unlikely that a court interpreting this statutory scheme would infer that the legislature intended to give licensees the ability to prescribe legend drugs when it has not expressly required them to demonstrate knowledge of such drugs in order to obtain a license.
It is true that the list of "related techniques" provided is clearly intended to be nonexclusive, as the list of specific related techniques is prefaced with the language "including but not limited to[.]" It is, however, unclear whether the ability to prescribe legend drugs could be a technique "related" to acupuncture, which, by its own definition, is intended to work "by controlling and regulating the flow and balance of energy."
Because the term "related techniques" has no generally accepted meaning outside of the statutory definition, which is non-exclusive, a court attempting to determine whether the ability to prescribe legend drugs does, in fact, fall within the scope of "related techniques" might turn to the canons of statutory construction. When the language of a statute proves ambiguous, the Court may turn to the well-established canons of statutory construction for assistance. Op. Att'y Gen.2004-043. One such canon is the "old and settled" doctrine of "ejusdem generis," under which general words are construed to embrace only objects similar in nature to those objects enumerated by specific words. Id (internal citations omitted.) Under this doctrine, only practices which are similar in nature to the practices listed as "related techniques" would fall within the general definition of that term. Another related canon of statutory construction is the doctrine of "noscitur a sociis," which literally means "it is known from its associates." See McKinney v. Robbins, 319 Ark. 596, 892 S.W.2d 502. Under noscitur a sociis, whether a practice would be considered a "related technique" would be determined by whether it is sufficiently similar to its "associates," i.e., the techniques specifically listed.
The related techniques listed by the statute are: acupuncture, moxibustion or other heating modalities, cupping, magnets, cold laser, electroacupuncture including electrodermal assessment, application of cold packs, ion pumping cord, lifestyle counseling, including general eating guidelines, tui na, massage incidental to *Page 8 
acupuncture, breathing and exercising techniques, and the recommendation of Chinese herbal medicine lawfully and commercially available in the United States. A.C.A. § 17-102-101(6) (2002). According to my research, the majority of these techniques involve stimulation of acupuncture points on the body and are performed in the licensee's office. As far as I am aware, none of the listed techniques involves any type of prescription medication. The listed techniques that could be used by the patient at home include following nutritional guidelines, practicing breathing techniques, doing exercises, and taking Chinese herbs. Again, none of these techniques appears to involve prescription medication. In addition, as previously stated, acupuncture is generally intended to work by "controlling and regulating the flow and balance of energy," while, to my knowledge, most legend drugs are intended to work by affecting biochemical processes. See A.C.A. § 17-102-101(1) (2002). For these reasons, it is my opinion that a court construing this statute using the canons of ejusdem generis and noscitur a sociis would likely find that prescribing legend drugs for the patient's use is not sufficiently associated with the techniques listed to be considered a "related technique."
For these reasons, it is my opinion that the Arkansas Acupuncture Practices Act likely does not authorize licensees to prescribe legend drugs for their patients' use.
Question 2: If licensees of the Acupuncture Board do not haveauthority under Arkansas law to prescribe legend drugs for theirpatients, do the provisions of Ark. Code Ann. §§ 17-92-101(16)(A)(i)(a),20-64-506(a) and Board of Pharmacy Regulation 08-00-0004 also prohibitAcupuncture Board licensees from wholesale purchases of legend drugs forin-office use?
The first subsection mentioned in your second question, A.C.A. § 17-92-101(16)(A)(i)(a), provides that the "practice of pharmacy" includes selling or dispensing drugs and/or medicines which, under federal law, can only be dispensed upon the prescription and order of a practitioner licensed to prescribe drugs. A.C.A. § 17-92-101(19)(A)(i)(a). The substance of A.C.A. § 20-64-506(a) and the substance of the regulation which you referenced are essentially the same. Both basically provide that:
 All wholesale distributors must, before shipping to a recipient in this state any prescription drug as defined in this regulation, ascertain that the person to whom shipment is made is
either a licensed physician licensed by the Arkansas State Medical Board, a licensed *Page 9 
Doctor of Dentistry, a licensed Doctor of Veterinary Medicine, a licensed Doctor of Podiatry Medicine, a hospital licensed by the State Board of Health, a licensed wholesale distributor as defined in this regulation, a licensed pharmacy licensed by the Arkansas State Board of Pharmacy, or other entity authorized by law to purchase or possess prescription drugs.
Board of Pharmacy Regulation 08-00-0004 (emphasis added).
In my opinion these authorities, at most, require pharmacists and wholesale distributors to ascertain whether a would be purchaser of prescription drugs is legally authorized to purchase the drugs. Accordingly, they do not, in a strict sense, prohibit Acupuncture Board licensees from doing anything. Naturally, however, if licensees are not authorized by law to purchase prescription drugs, these authorities would, as a practical matter, make it very difficult for licensees toobtain these drugs from an Arkansas pharmacy. The issue of whether licensees are authorized to purchase the drugs in question comes back to what is authorized by the Arkansas Acupuncture Practices Act. For a discussion of whether the Arkansas Acupuncture Practices Act and/or the accompanying regulations permit a licensee to purchase legend drugs for in-office use, please see my responses to Questions 3 and 4, below.
Question 3: Does the "Scope of Practice" described in Title I (B) ofthe Rules and Regulations of the Arkansas State Board of Acupuncture andRelated Techniques authorize Acupuncture Board licensees to prescribe orpurchase legend drugs?
Pursuant to A.C.A. § 17-102-206, the Arkansas State Board of Acupuncture and Related Techniques is authorized to "adopt, publish, and, from time to time, revise such rules and regulations not inconsistent with the law as may be necessary to enable it to carry into effect the provisions of [the Arkansas Acupuncture Practices Act]. A.C.A. § 17-102-206(b)(5).
The board has adopted a regulation giving its licensees the title "Doctor of Oriental Medicine:"
 "Doctor of Oriental Medicine" is an individual licensed to practice acupuncture and related techniques, including oriental medicine, *Page 10 
pursuant to the Act and as such has responsibility for his or her patient as an independent specialty care provider.
Rules and Regulations, Arkansas State Board of Acupuncture Related Techniques, I. A. 8. (Emphasis added.) The regulations go on to define the scope of the practice of oriental medicine:
 B. SCOPE OF PRACTICE: The practice of oriental medicine in Arkansas is a distinct system of primary health care with the goal of prevention, cure, or correction of any illness, injury pain or other physical or mental condition by controlling and regulating the flow and balance of energy and functioning of the person to restore and maintain health. Oriental medicine includes all traditional and modern diagnostic, prescriptive and therapeutic methods utilized by practitioners of acupuncture and oriental medicine world wide. The scope of practice of Doctors of Oriental Medicine shall include but is not limited to:
 1. Evaluation and management services.
 2. Examination and diagnostic testing.
 3. The ordering of radiological, laboratory or other diagnostic tests.
 4. The procedures of acupuncture, injection therapy and other related procedures. Before utilizing Oriental medicine injection therapy, Doctors of Oriental Medicine, holding an Arkansas State license, must complete and submit proof of completion of an Arkansas State Board of Acupuncture and Related Techniques approved course of study in Oriental Medical injection therapy which, includes the management of anaphylaxis and associated emergency protocol.
 5. The stimulation of points or areas of the body using needles, heat, cold, light, lasers, sound, vibration, magnetism, electricity, bleeding, suction, pressure, or other devices or means.
 6. Physical medicine modalities and procedures. *Page 11 
 7. Therapeutic exercises, breathing techniques, meditation, and the use of biofeedback and other devices that utilize color, light, sound, electromagnetic energy and other means therapeutically.
 8. Dietary and nutritional counseling and the administration of food, beverages and dietary supplements therapeutically.
 9. The prescription or administration of any herbal medicine, homeopathic medicine, or substances such as vitamins, minerals, enzymes, glandulars, amino acids and nutritional or dietary supplements.
 10. Counseling regarding physical, emotional and spiritual balance in lifestyle.
AR ADC 190 00 001, I. B. (Emphasis added.)
You have asked whether this regulation permits licensees to prescribe or purchase legend drugs. As previously noted, the Act does not mention the ability to "prescribe" any drug; however, the regulation in question states that the scope of a licensee's practice includes the "prescription or administration of any herbal medicine, homeopathic medicine or substances such as vitamins, minerals, enzymes, glandulars, amino acids and nutritional or dietary supplements."
I do not believe that the majority of the drugs described by the regulation fall into the category of legend drugs.[5] More specifically, with some notable exceptions, i.e., prescription strength vitamins, the majority of these drugs are likely not legend drugs by virtue of the substances that they contain. However, because any drug intended to be administered by injection or intravenously is a legend drug by virtue of its method of administration (see supra, note 3), the drugs described by the regulation would be considered legend drugs in their injectable form (if any). Moreover, the regulation specifically provides that "injection therapy" is within the scope of a licensee's practice.[6] *Page 12 
Thus, while it is my opinion that the regulation in question does not authorize licensees to prescribe or purchase legend drugsgenerally, it does appear to authorize licensees to prescribe or purchase for in-office administration, the categories of drugs listed, regardless of whether they are classified as legend drugs. For this reason, it is my opinion that the regulation purports to authorize licensees to prescribe or purchase those legend drugs which can fairly be described as herbal medicines, homeopathic medicines, vitamins, minerals, enzymes, glandulars, amino acids, or nutritional/dietary supplements.[7] It may be noted that this response, taken together with my response to your first question, indicates that the regulation in question may authorize activities which are not clearly authorized by the Act. For further discussion of this dichotomy, see my response to your fourth question below.
Question 4: If the Acupuncture Practice Act does not expresslyauthorize its licensees to prescribe or purchase legend drugs, may theArkansas State Board of Acupuncture and Related Techniques promulgate arule authorizing or permitting its licensees to prescribe or purchaselegend drugs?
The Act does not expressly authorize the board's licensees to prescribe or purchase legend drugs. As noted, neither the word "prescribe" nor any permutation of that word appears in the Act. Nevertheless, as set forth in response to your third question, the board has promulgated rules that purport to allow its licensees to prescribe or purchase for in-office administration, certain listed categories of drugs, regardless of whether they are classified as legend drugs.
Your question is whether a lack of express prescriptive authority in the Act would prevent the board from passing regulations permitting licensees to prescribe or purchase legend drugs. However, in light of the foregoing analysis, it appears to me that the relevant question is whether the regulations granting licensees authority to prescribe and/or purchase certain legend drugs are ultra vires of an Act that does not appear to include prescriptive authority. *Page 13 
The board is, of course, statutorily authorized to "adopt, publish, and, from time to time, revise such rules and regulations not inconsistent with the law as may be necessary to enable it to carry into effect the provisions of [the Arkansas Acupuncture Practices Act]." Due to the vague language used by the Act, however, it is difficult to determine whether the rules and regulations promulgated by the board are consistent with the law.
A court reviewing a regulation must give that regulation the same presumption of validity that it would to a statute. McLane Co., Inc. v.Davis, 353 Ark. 539, 110 S.W. 3d 251 (2003). Moreover, "in reviewing the adoption of regulations by an agency under its informal rule-making procedures, a court is limited to considering whether the administrative action was arbitrary, capricious, an abuse of discretion orotherwise not in accordance with the law. Id (emphasis in original.) However, the deference generally paid to regulations notwithstanding, it is well-established under the doctrine of "separation of powers" (Ark. Const. art. 4, §§ 2 and 3) that administrative agencies do not have the power to legislate and cannot substitute their own standards for those which the legislature has imposed by statute. Kettell v. Johnson Johnson, 337 F. Supp. 892 (E.D. Ark. 1972). Of course, while the legislature may not delegate its legislative authority to an agency, it may delegate the power to determine the facts and circumstances upon which a law will operate by providing appropriate guidelines.Venhaus v. State, 285 Ark. 23, 684 S.W. 2d 252 (1985); see also,Campbell v. Arkansas State Hospital, 228 Ark. 205, 306 S.W.2d 313
(1957). It must be noted that statutes which vest "unbridled discretion" with executive officers are unconstitutional. Id. In addition, generally speaking, a legislature is not permitted to authorize administrative officers to make regulations which conflict with or vary the provisions of a statute. 16 C.J.S. Constitutional Law § 144 at 470.
I concluded in response to your first question that the Act likely does not permit licensees to prescribe legend drugs to their patients. As previously stated, agencies may not substitute their own standards for those which the legislature has imposed. Venhaus, 285 Ark. 23,684 S.W. 2d 252. In addition, the legislature generally may not authorize an administrative board to make a regulation which conflicts with or varies the provisions of a statute. 16 C.J.S. Constitutional Law § 144 at 470. Because the ability to prescribe legend drugs to patients has implications for the health and welfare of Arkansans, the addition of such authority could be considered a signification variation of the Act's provisions. For this reason, it is possible that a court could find that the regulation, in so far as it allows licensees to prescribe certain types of legend drugs, is ultra vires of the Act. *Page 14 
If the legislature wishes to permit licensees to prescribe legend drugs to their patients, clarification of the statutory language is needed, in my opinion.
Determining whether the Act permits licensees to purchase legend drugs to use for in-office procedures is more difficult. As previously stated, the Act does not describe the scope of a licensee's practice, leaving the definitions and the section dealing with licensing examinations to speak for themselves. The language used in these sections includes phrases such as "other modalities and procedures" and "related techniques." While the phrase "related techniques" is admittedly defined, the first part of the definition is difficult to decipher due to its construction. The second part of the definition is equally challenging because, while it contains a number of concrete examples of related techniques, it also includes the phrase "including, but not limited to." For these reasons, it is difficult to determine precisely how licensees are permitted to treat their patients under the Act.
By contrast, it is clear that the regulations permit licensees to purchase legend drugs for office procedures. As previously set forth, the regulations define the scope of a licensee's practice, and their approach is quite broad. The regulations specifically include "injection therapy" and "the prescription and administration" of certain types of drugs, as within the scope of a licensee's practice. If this inclusion of injection therapy within the scope of a licensee's practice is permissible under the Act, then it would likewise be permissible under the Act for licensees to purchase the types of legend drugs authorized by the regulation for in office administration because, as previously stated, injectables are legend drugs by virtue of their method of administration.
Testing the contents of the regulations dealing with injection therapy against the provisions of the Act, I have identified two possible arguments that the technique of injection therapy falls within the Act. The first possible argument is that injection therapy falls within the definition of "acupuncture." While the Act defines the term "acupuncture" to include what many people traditionally think of as acupuncture — "the insertion, manipulation, and removal of needles from the body," the definition also includes "the use of other modalities andprocedures at specific locations on the body." (Emphasis added.) The phrase "other modalities and procedures" — is not defined. According to my research, injection therapy, which obviously involves needles, albeit not acupuncture needles, is given at the specific locations on the body which correspond to acupuncture points. This methodology raises the issue of whether the use of the phrase "other modalities and procedures" brings injection therapy within the definition of acupuncture. The *Page 15 
second possible argument is that injection therapy falls within the definition of related techniques, as previously set forth. I will endeavor to address the merits of both arguments below.
Again, in attempting to ascertain what the Act permits, I must follow the Arkansas Supreme Court's rules of statutory construction. Op. Att'y Gen. 2004-043. When the language of a statute proves ambiguous, the Court may turn to the well-established canons of statutory construction for assistance. See id. Because the language of the Act is ambiguous regarding the permissibility of injection therapy, I will, once again, turn to the canons of noscitur a sociis and ejusdem generis. Underejusdem generis, only techniques which are similar in nature to the techniques actually mentioned by the Act would fall within its general language. Similarly, under noscitur a sociis, whether a practice would be covered by the Act would be determined by whether it is sufficiently similar to its "associates" i.e., the techniques specifically listed.
The techniques specifically listed by the Act are: acupuncture, moxibustion or other heating modalities, cupping, magnets, cold laser, electroacupuncture including electrodermal assessment, application of cold packs, ion pumping cord, lifestyle counseling, including general eating guidelines, tui na, massage incidental to acupuncture, breathing and exercising techniques, and the recommendation of Chinese herbal medicine lawfully and commercially available in the United States. A.C.A. § 17-102-101(6) (2002). The only actual "drugs" mentioned are Chinese herbs. As stated, any substance designed to be injected into a patient is a "legend drug" by virtue of its method of administration.See supra, note 3. According to my research, none of the listed techniques involve introducing any substance into the patient's bloodstream. Moreover, as previously described in footnote eight (8), the regulations themselves seem to treat injection therapy as something separate from acupuncture and other related techniques, as they require a licensee to submit proof of additional training to the board before he or she will be permitted to administer injection therapy.
For these reasons, I have grave doubts that a court would find the practice of injection therapy sufficiently similar to the techniques listed to fall within the scope of the Act. Again, agencies may not substitute their own standards for those which the legislature has imposed. Venhaus, 285 Ark. 23, 684 S.W. 2d 252. The legislature may not authorize an administrative board to make a regulation which conflicts with or varies the provisions of a statute. 16 C.J.S. ConstitutionalLaw § 144 at 470. In addition, the constitution does not permit the legislature to vest an *Page 16 
administrative board with "unbridled discretion." See Venhaus,285 Ark. 23, 684 S.W. 2d 252. Because the practice of injection therapy has significant implications for the health and welfare of Arkansans, the addition of such therapy within the scope of a licensee's practice could be considered a signification variation of the Act's provisions. Moreover, if the general language of the Act is construed broadly enough to permit a technique as distinct from the listed techniques as injection therapy, then that language could arguably be seen as vesting the board with "unbridled discretion" in violation of our Constitution. The courts will avoid construing an act in an unconstitutional manner whenever possible. Love v. Hill, 297 Ark. 96, 759 S.W.2d 550 (1988). For this reason, I am constrained to conclude that a court might well find that the regulations permitting injection therapy are ultra vires of the Act. If the legislature wishes to ensure that patients receiving injection therapy will continue to have access to this form of treatment, legislative clarification is warranted.
As has been noted throughout this opinion, the language of the Act is extremely vague on the subject of what licensees are permitted to do within the scope of their practice. The legislature is not permitted to delegate its legislative authority and, therefore, may not vest executive boards with "unbridled discretion" without running afoul of the Constitution. Venhaus, 285 Ark. 23, 684 S.W. 2d 252. In my opinion, a court faced with the question could find that the Act itself is unconstitutionally vague regarding the scope of a licensee's practice. Legislative clarification is warranted.
Question 5: If licensees of the Acupuncture Board do have authorityunder Arkansas law to prescribe legend drugs for patients and forin-office administration, are they also authorized to prescribecontrolled substances, as defined by the Arkansas Uniform ControlledSubstances Act, Ark. Code Ann. § 5-64-101, et. seq, and federal law,Title 21 U.S.C. § 800, et. seq; Title 21 C.F.R. Part 1300 et. seq?
I previously concluded that licensees likely do not have prescriptive authority under the Act and that any such authority given by the board's regulations is potentially ultra vires. I likewise expressed grave doubt as to whether licensees have the authority to purchase legend drugs for in-office administration through injection therapy. Although the regulations clearly provide for such authority, the language of the Act does not seem to contemplate such practices. Because it appears doubtful that the Act permits licensees to prescribe or purchase, for in *Page 17 
office administration, any legend drug, it is my opinion that licensees probably do not have the authority to prescribe or administer controlled substances.
Assistant Attorney General Jennifer L. Clingan prepared the foregoing opinion, which I hereby approve.
Sincerely, DUSTIN McDANIEL Attorney General
[1] Regulations passed by the Arkansas State Board of Acupuncture and Related Techniques grant their licensees the title of Doctor of Oriental Medicine. See Rules and Regulations, Arkansas State Board of Acupuncture Related Techniques, I. A. 8. These regulations make no distinction between an "acupuncturist" and a "doctor of oriental medicine."Id. The regulations then go on to define the scope of the practice of oriental medicine. See Rules and Regulations, Arkansas State Board of Acupuncture Related Techniques, I. B. The term "oriental medicine" does not appear in the Act; however, it appears to be the board's position that the practice of oriental medicine is a "related technique" as defined by A.C.A. § 17-102-102(6). See Rules and Regulations, Arkansas State Board of Acupuncture Related Techniques, I. A. 8.
[2] This would include the conventional medications that one typically thinks of as prescription drugs, e.g. oral antibiotics.
[3] Here the method of delivery itself (typically injection) would create the "potential for harm" under A.C.A. § 20-64-503(6)(A)(ii).See, e.g. Sullivan v. Department of Health, 885 So.2d 873 (Fla.App. 2004).
[4] According to the redacted dispensing records that you provided, such legend drugs currently being prescribed by the board's licensee(s) include: thyroid medications, anti-fungals, antibiotics, corticosteroids, diuretics and etc., as well as, medications intended to treat enlarged prostate, erectile dysfunction, hormone replacement, angina, and a number of other medical conditions.
[5] As will be noted again below, it is somewhat difficult to determine which legend drugs might fit the description set forth by the regulation.
[6] By listing injection therapy separately from acupuncture and related procedures, and by requiring a licensee to demonstrate that he or she has received additional training before permitting said licensee to administer injection therapy, the regulation arguably suggests that injection therapy is neither "acupuncture" nor a "related technique." As will be set forth in greater detail in response to Question 4, the Act itself does not specifically address injection therapy.
[7] As a practical matter, whether a specific legend drug falls within one of these categories may be a difficult determination for a pharmacist to make. The terms used to describe the drugs that may be prescribed are quite broad and are currently undefined by either the act or the regulations. Accordingly, a more specific prescriptive formulary may be warranted. *Page 1